**Redacted Version**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

███████████████

ELIAS GROUP, LLC,

        Plaintiff,

v.

THE UNITED STATES OF AMERICA,

        Defendant,

and

VISION PLANNING & CONSULTING, LLC,

        Defendant-Intervenor.

Case No. 17-1490

Hon. Robert H. Hodges, Jr.

## FIRST AMENDED COMPLAINT

Plaintiff Elias Group, LLC ("Elias") files its Complaint against Defendant the United States of America, acting through the U.S. Department of Homeland Security, Federal Emergency Management Agency ("FEMA"). For its complaint, Elias alleges as follows.

## NATURE OF THE ACTION

1.     This is a bid protest challenging FEMA's irrational and unlawful evaluation of technical proposals and construction of a competitive range under RFP No. HSFE40-16-R-0002 (the "RFP"). FEMA unlawfully and unreasonably treated Elias disparately from another offeror, Vision Planning & Consulting, LLC ("VPC") in the evaluation of proposals that established the competitive range and in determining the constituents of the range.

2.     FEMA did not apply the competitive range criteria equally to identify the most highly rated proposals. FEMA assigned VPC ███████████████████ that assumed VPC

would correct ███████████ in its proposal, ████████████████████ ████████ By contrast, FEMA ███████████████████████████ ████████████████

3.    This unequal treatment was arbitrary and capricious and tainted the remaining steps in the source selection process.  If all offerors were assigned ratings that included a proper assessment of deficiencies, FEMA would have eliminated VPC.  If, instead, FEMA assigned ratings ███████████████████████ Elias would have been included. FEMA was not free to follow the permissive course for VPC alone.

4.    FEMA's attempt to distinguish its treatment of VPC ███████████████ ███████████████████████ is a telling exercise in semantics.  Regardless ████████ ███████████████████████████████████ VPC was required to █████████████████████████████ in an attempt to correct issues that otherwise would have led to disqualification. Elias ██████████████████████████ █████████████████████████████████ If an offeror ████ ██████████████████████ was allowed to bring its proposal from disqualification to compliance, it was arbitrary and capricious not to allow Elias to do the same.

5.    FEMA's arbitrary and unequal procurement decisions in favor of VPC are particularly troubling in light of the history of protests of this procurement.  The RFP seeks a contractor to provide support services to entities and individuals applying for FEMA firefighting grants and to assist FEMA in the evaluation and award of thousands of grants every year.  *See generally* Ex. A, RFP.  FEMA first announced an award to VPC on September 29, 2016, following an evaluation of proposals without discussions or revisions.  Another offeror, 2M Research Services LLC ("2M"), successfully protested that award to the Government



2

Accountability Office ("GAO"). 2M's protest and supplemental protest clearly demonstrated that VPC had proposed to violate the limitation on subcontracting and that FEMA had failed to apply reasonably the RFP criteria and applicable regulatory requirements.

6.    After its attempts to dismiss the protest and hide evidence behind redactions were denied, FEMA agreed to take corrective action and 2M's GAO protest was dismissed on this basis. FEMA stated that its corrective action would include determining as a threshold matter whether offerors were in compliance with FAR 52.219-14 — and, thus, eligible to remain in the competitive range — and then reevaluating proposals in several areas where VPC's proposal was either ████████████████████████. *See* Ex. B, Decision, *2M Research Services LLC*, B-413993 et al., Dec. 6, 2016. In practice, however, FEMA included VPC's proposal in the competitive range even though ██████████████████████████████████ ████████████

7.    When FEMA announced that VPC had been selected for award again — thereby revealing for the first time that VPC had been included in the competitive range and allowed to correct its proposal — Elias quickly deduced the existence of blatant and illegal inequality inherent in FEMA's evaluation of proposals. FEMA ██████████████████████ but ignored VPC's ineligibility to compete and its failure to satisfy minimum, mandatory RFP requirements and then massaged VPC's proposal into acceptability.

8.    In this action, Elias seeks a declaration from the Court finding that FEMA's disparate treatment of treatment of VPC and Elias and the exclusion of Elias from the competitive range was arbitrary, irrational, and contrary to law. Elias further seeks relief in the form of an injunction ordering FEMA to terminate the award to VPC, reopen discussions, allow

Elias to submit a final proposal revision, and reevaluate proposals consistently with the RFP's criteria.

## **PARTIES**

9.      Elias is limited liability company registered in the state of Maryland with principal offices located at 3545 Ellicott Mills Drive, Suite 304, Ellicott City, Maryland, 21043. As required to be eligible for a contract under the RFP, Elias is a certified small business under the Small Business Association's ("SBA") 8(a) program.

10.     Elias provides comprehensive professional services to Federal, State and local government agencies, as well as commercial clients across the United States.  Founded in 2001, Elias is an experienced contractor with documented grant management background.  In its most recent engagement with the Centers for Medicare and Medicaid Services, Elias provides grant process formulation for the CMS enterprise as well as grant operational support. ██████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

11.     The defendant is the government, acting through FEMA, which is headquartered at 500 C St. SW, 3rd Floor, Washington, D.C. 20472.

## **JURISDICTION**

12.     This Court has jurisdiction over this action pursuant to the Tucker Act, 28 U.S.C. § 1491(b), as amended by the Administrative Disputes Resolution Act.

**STANDING**

13.     Elias is an "interested party" under 28 U.S.C. § 1491(b)(1) because it is an actual offeror whose direct economic interest was adversely affected by FEMA's disparate treatment of Elias's and VPC's proposals and FEMA's subsequent erroneous award of a contract to VPC.

14.     Had FEMA evaluated VPC's and Elias's proposals fairly and in accordance with the terms of the RFP, Elias would have been included in the competitive range, would have ███ █████████████████████████████████████████████████, and likely have been awarded the contract.

**TIMELINESS**

21.     Elias's protest of FEMA's unequal evaluation and competitive range determination is timely under this Court's decisional law.  Elias learned that VPC was included in the competitive range as a result of FEMA's unequal evaluation decisions when it was informed that VPC was awarded the contract on September 29, 2017.  Elias timely filed this protest soon thereafter.

22.     Elias could not have filed this protest in 2016, when FEMA's first evaluation was completed.  This protest concerns FEMA's arbitrary, capricious, and unequal treatment in establishing a competitive range and conducting discussions in April and May of 2017.  FEMA did not take similar steps in 2016, and even if it had, its 2016 award decision was cancelled. FEMA was required to apply the RFP consistently with applicable procurement law when it reevaluated proposals in 2017, and Elias is entitled to protest its failure to do so.

23.     At the time it was excluded from the competitive range, Elias had no reason to know that FEMA had waived the RFP criteria for VPC, ███████████████████████ ██████████████████████ and its ███████████████ proposal in the competitive

5

range at the same time as Elias did not receive this favorable treatment. Elias learned of these facts when VPC was awarded the contract, which necessarily indicated it had been included in the competitive range despite ████████████████. This protest was timely filed soon thereafter.

## STATEMENT OF FACTS

### A.   Overview of the Procurement

24.    FEMA issued the RFP on May 9, 2016, seeking proposals to provide technical and administrative support for FEMA's administration of various grant programs, including Assistance to Firefighters Grants ("AFG"), Fire Prevention and Safety Grants ("FP&S"), and Staffing for Adequate Fire and Emergency Response ("SAFER") grants.  Ex. A, RFP § C.1.0. The awardee will assist FEMA's administration of these grants by providing technical subject matter expertise to support the AFG helpdesk; completing administrative tasks associated with grant awards, administration, and closeout; and providing technical evaluation panel review support. *Id.* § C.1.2.

25.    The RFP contemplated the award of a firm, fixed price contract for a total period of four years and five months, including option periods.  *Id.* §§ B.2, C.1.4.1, F.2.  Competition was restricted to small business concerns certified by the SBA for participation in the SBA's 8(a) Program.  *Id.* § I.10 (FAR 52.219-18).  Work was categorized under NAICS Code 541611, Administrative Management and General Management Consulting Services, which incorporated a small business size standard of $15 million.

### B.   The RFP's Instructions for Technical Proposals and Evaluation Criteria

26.    The RFP instructed offerors to submit proposals in two volumes, one for the technical proposal and one for price.  Ex. A, RFP § L.4.3.  The required contents and evaluation scheme for the technical proposal volume were as follows.

27.     Technical proposals were to address four factors, in the following order of importance:  (1) Work Plan and Management Approach; (2) Past Performance; (3) Staffing Plan and Key Personnel; and (4) Quality Control Plan.  *Id.*; *see also id.* § M.3.5 (noting order of importance for technical factors).

28.     The first and most important technical factor for proposals encompassed two subfactors:  (1) Work Plan and (2) Management Approach.  For the Work Plan subfactor, offerors were to fully describe how they proposed to achieve the requirements set forth in the Performance Work Statement ("PWS") incorporated into the RFP as Section C.  *Id.* § L.4.4.2. Offerors were required to include specific and detailed information that was "complete enough to demonstrate the Offeror has a thorough understanding of the requirements in the PWS."  *Id.*

29.     Under the Management Approach subfactor, offerors were asked to demonstrate their "ability to direct and control the operation of this requirement both programmatically and on a daily basis in an efficient and cost effective manner."  *Id.*

30.     The second most important technical factor was Past Performance.  For the Past Performance factor, offerors were instructed to submit up to three client references related to prior projects in which the offeror performed as a prime or subcontractor.  *Id.* § L.4.4.3.1.  All three references were required to pertain to "contracts of a similar size, scope, and nature to the scope of work identified in the PWS."  *Id.*  At least one of the three client references was required to be a reference for the proposed prime contractor.  *Id.*

31.     The third technical factor, Staffing Plan and Key Personnel, required offerors to describe how they intended to staff the contract to meet the PWS requirements.  *Id.* § L.4.4.4.  As to the staffing component of this factor, the RFP required a "description of how the Offeror will

7

recruit, train, retrain and otherwise maintain a qualified work force for this requirement as well as the proposed plan to supervise and coordinate its staff." *Id.*

32.     The Key Personnel component required the offeror to identify and present resumes of personnel meeting the minimum qualifications set forth in the PWS. *Id.* With respect to Key Personnel proposed, the proposal was required to demonstrate the proposed person understood the program scope and objectives and had relevant experience. *Id.*

33.     An amendment to the RFP issued on June 2, 2016, included the following table depicting Key Personnel requirements:

| Labor Category | Key Personnel? | PWS Section | Labor Category Description | Required Education | Minimum Experience |
|---|---|---|---|---|---|
| Project Manager/ Alternate Project Manager | Yes | 1.4.9 | Responsible for general management of contractual effort and for overall project management of the tasks. Duties include management, supervising, strategic planning, resource allocation, personnel management, and task management. | Bachelor's Degree in Business or related technical discipline | 5 Years in project management experience |
| Subject Matter Expert – Fire Service | No | 4.3.2 and 4.3.3 | Responsible for answering technical questions relating to fire department operations, public safety, and application process. | None | 5 years in a public safety department with knowledge of the operational needs of a fire department. |

| Labor Category | Key Personnel? | PWS Section | Labor Category Description | Required Education | Minimum Experience |
|---|---|---|---|---|---|
| Subject Matter Expert – Research and Development | No | 4.3.5 | Responsible for provide technical guidance to potential applicants or grantees on the program or to support DHS at national or regional conferences. | Masters degree in public health, health sciences, engineering or related disciplines. | 3 years of research related experience |

*Id.* at Attachment C.

34.     The final technical factor, Quality Control Plan, required offerors to show that they had "policies and procedures [to] ensure compliance with the contract requirements in a timely and accurate manner; [and a] method of documenting and enforcing quality control procedures of both the prime contractor and any subcontractors including inspection and acceptance and identification of quality control indicators and methods of correcting any found deficiencies." *Id.* § L.4.4.5.

35.     FEMA's evaluation process for the technical factors involved assigning Strengths and Weaknesses and issuing an adjectival rating for each factor and for the technical volume as a whole.  Ex. A, RFP § M.3.7.

36.     The RFP defined a "Deficiency" as a "material failure of an offer or quotation to meet a Government requirement or a combination of significant weaknesses in an offer or quotation that increases the risk of unsuccessful contract performance to an unacceptable level." *Id.*

37.     Adjectival ratings for technical proposals were, in order of highest rating to lowest rating:  Superior, Good, Satisfactory, Marginal, and Unsatisfactory.  *Id.* § M.3.7.  An "Unsatisfactory" rating was to be assigned if the proposal "fails to meet requirements and one or

more deficiencies exist for which correction would require a major revision or redirection of the proposal. A contract cannot be awarded with this proposal." *Id.*

38.     The RFP stated that FEMA would apply the same ratings to the Work Plan and Management Approach factor individually and nearly identical adjectival ratings to the Staffing Plan & Key Personnel factor.  *See id.* §§ M.4.1.3M.4.3.2.

39.     Past Performance ratings were assigned using adjectival ratings of Superior, Satisfactory, Unsatisfactory, or Neutral.  *Id.* § M 4.2.5.

40.     Quality Control Plan was rated on an Acceptable/Unacceptable basis.

**C.     FEMA's Initial Award of the Contract to VPC**

41.     On September 29, 2016, Elias received notice that VPC had been awarded the contract.  Ex. D, Notice to Unsuccessful Offeror (Sept. 29, 2016).  Elias immediately requested a debriefing, which was provided in writing on October 7, 2016.  Ex. E, Postaward Debriefing (Oct. 7, 2016).

42.     The debriefing disclosed that



43.     Elias's

44.     Elias                                              In fact,

10

███████████████████████████████████████████

Nevertheless, FEMA did not conduct discussions before making its first award decision, so Elias

████████████████████████████████████.

45.     The debriefing disclosed that VPC ██████████████████████████

██████████████████████ VPC's evaluated price was ████████████████████

██████████████████████████.

**D.      Protest of FEMA's First Award to VPC and FEMA's Corrective Action Announcement**

46.     On October 12, 2016, 2M submitted its first bid protest to the GAO, challenging FEMA's award of the contract to VPC.

47.     2M's protest relied on publicly available documents showing that VPC had six "employees," five of whom were consultants who worked for other firms or university students.

48.     2M also pointed out that public records of government contracting showed that VPC has no experience with grants administration.  In a subsequent filing, 2M provided further evidence that VPC had never held a comparably sized contract, had yearly revenues of about 1 percent the value of the contract issued under the RFP, and had recently moved from its owner's private residence to an office it shares with several other companies.  2M's protest asserted that these shortcomings should have led to deficiencies and reduced scores under three technical factors and disqualification under FAR 52.219-14, limitations on subcontracting, among other things.

49.     FEMA's apparent litigation strategy was to hide the fact that it had not considered VPC's shortcomings or determined whether the proposed a labor allocation satisfied FAR 52.219-14 by providing at least 50 percent of the value of labor with prime employees.

████████████████████████████████████████████

50.     FEMA's first response was a request for dismissal of the protest, arguing that public records showing VPC's lack of employees, lack of office space, and lack of experience were not enough.  GAO largely denied this motion.

51.     ███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

52.     When VPC's full proposal and FEMA's evaluation results were finally provided, 2M submitted a supplemental protest showing that VPC ████████████████████████

███████████████████████████████     The supplemental protest also showed that FEMA relied entirely on the past performance references of VPC's large business subcontractor and failed even to notice that VPC itself had no relevant past performance.   2M also submitted comments on the agency report detailing how FEMA's failure to review VPC's compliance with the limitation on subcontracting and ████████████████████████████████

██████████████████████████████████████████████

53.     GAO dismissed the protest on December 6, 2017, finding that FEMA's announcement that it would take corrective action rendered the protest academic.  GAO noted that FEMA indicated its intent to do the following:

> (1) re-evaluate the past performance factor, (2) review compliance with the limitation on subcontracting under FAR 52.219-14, (3) decide whether to award with or without discussions and conduct price evaluation as necessary, and (4) issue a new technical source selection evaluation board consensus report and a source selection decision document.

Ex. B at 1.

████████████████████████████████████████████████████████

54.     These corrective measures corresponded to the serious flaws in VPC's proposal that were identified in the course of the GAO protest and that called into question VPC's technical acceptability, let alone its ability to merit ████████████████

55.     Perhaps most importantly, FEMA's corrective action announcement specifically stated that it would "review compliance with the limitation on subcontracting under FAR 52.219-14." Ex. B at 1.  The referenced limitation on subcontracting at FAR 52.219-14 states that a small business prime contractor may not subcontract more than 50 percent of the value of labor on a service contract.  An honest "review" of compliance with FAR 52.219-14, after 2M's protest ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ in the evaluation of proposals to set a competitive range.

**E.      FEMA's Corrective Action Implementation and Second Award of the Contract to VPC**

56.     On December 13, 2016, Elias received a notification from FEMA that it was re-evaluating proposals submitted in response to the RFP and asking Elias to confirm that its proposal was still valid.  Ex. G, Re-evaluations Email (Dec. 13, 2016).  Elias informed FEMA that its proposal was still valid.

57.     On April 4, 2017, FEMA notified Elias that its proposal was excluded from competitive range and that it would not receive further consideration for award.  Ex. H, Notice to Unsuccessful Offeror (Apr. 4, 2017).  Elias immediately requested a debrief in writing from the government, which it received on April 13, 2017.  Ex. I, Preaward Debriefing (Apr. 13, 2017).

58.     The corrective action debriefing ████████████████████████

████████████████████   ████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████

59.    Again, t████████████████████████████████████████████████████

████████████████████████████████████████ *Id.* ██████████████████████

████████████████████████████████████████ and excluded it from the competitive range.

60.    FEMA did not disclose the number or names of offerors who were included in the competitive range in the preaward debriefing.  Elias therefore had no basis to speculate whether other offerors had been treated equally in the competitive range determination.

61.    Had FEMA included Elias in the competitive range, conducted discussions, and allowed it to submit a final proposal revision, Elias ████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████

62.    Unbeknownst to Elias at the time of the competitive range determination, FEMA did not hold VPC to the same exacting standard that it applied Elias, ████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████

63.    FEMA ignored and downplayed VPC's proposal flaws and refused to assign any deficiencies before including VPC in the competitive range, despite its failure to comply with the threshold standard for competing as established by FAR 52.219-14, and the numerous deficiencies, risks, and problems that would have been identified under any reasonable evaluation of its proposal.

14

███████████████████████████████████████████████████████████████

64. FEMA knew that VPC's proposal, before corrections, violated FAR 52.219-14. In fact, ███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████.

65. In marked contrast to ██████████████████████████████████,
FEMA did not evaluate this issue as a deficiency. Instead, FEMA withheld judgment and ███

████████████████████████████████████████████████████████████████████████

████████████████ Thus, FEMA assigned a rating to VPC that already assumed VPC would correct its proposal.

66. FEMA also completely ignored and declined to assess weaknesses and deficiencies related to VPC's lack of proven resources; lack of experience recruiting, hiring and managing a staff; and lack of a past performance record.

67. FEMA then engaged in discussions with VPC and other offerors that had been included in the competitive range. In these discussions, FEMA ██████████████████

████████████████████ ██████████████████ VPC responded ██████████████

████████████████████████████████████████████████████████████████████████

████████████████████████ Again, rather than assess a deficiency, FEMA simply carried on, allowing VPC to submit a substantially revised proposal that, for the first time, ████████████████████████████████████████████████████████████████

█████████████████████

68. VPC's proposal revisions were far more extensive than any revisions that Elias would have been required to make ████████████████████████████████. VPC ████████

████████████████████. Elias ███████████████████████████████████████.

████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

### F.    **VPC's Subcontractor Hires a Former FEMA Official**

69.     On April 26, 2017, not long after the competitive range was established and during the discussions process, VPC's large business subcontractor, The Cadmus Group, announced that it had hired former FEMA administrator W. Craig Fugate as a senior advisor to the CEO.  *See* Ex. J, News Release, Craig Fugate Joins Cadmus as Senior Advisor (Apr. 26, 2017), http://www.cadmusgroup.com/news/craig-fugate-joins-cadmus-senior-advisor/.

70.     Cadmus's news release states that Mr. Fugate served as the Administrator of FEMA from May 2008 to January 2017.  In this role, Mr. Fugate undoubtedly had access to information concerning the RFP, FEMA's needs, its evaluation process, and other information that would be valuable to a competitor.

71.     FEMA did not conduct any analysis to determine whether Mr. Fugate's hiring created an organizational conflict of interest ("OCI"), and VPC failed to take any steps to mitigate this OCI.

72.     On September 29, 2017, FEMA awarded the contract to VPC for a second time.

### COUNT I — FEMA Treated Elias Disparately from VPC in Identifying the Most Highly Rated Proposals for Inclusion in the Competitive Range.

73.     Elias realleges paragraphs 1 through 72 as if fully set forth herein.

74.     The FAR requires "integrity, fairness, and openness" in procurements conducted under the Federal Acquisition System, FAR § 1.102(b)(3), and specifically prohibits "[g]overnment personnel involved in the acquisition [from engaging] in conduct that ... [f]avors one offeror over another," FAR § 15.306(e)(1).  Unequal treatment between offerors is arbitrary and capricious and grounds for sustaining a protest.

16

75.     FEMA's competitive range determination ███████████████ ███████████████████████████████████████████████████████ ████████████████████████████████and therefore resulted in exclusion of the proposal from the competitive range.

76.     FEMA applied these criteria arbitrarily and capriciously by relaxing the rules for VPC and declining to assign deficiencies before VPC was allowed to make corrections, while simultaneously interpreting the criteria unreasonably strictly for Elias ███████████ ██████████████████.

77.     FEMA's competitive range determination disregarded and downplayed all █████ █████████ affecting VPC's proposal.  In order to include VPC in the competitive range, FEMA waived the RFP's requirement under the Work Plan and Management Approach factor, which required the agency to compare the proposed allocation of resources to the price proposal to ensure understanding and compliance with the requirements.  *See* Ex. 1, RFP § M.4.1.1.  FEMA █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ ██████.  However, this issue ████████████████████████████████████ ███████████████████████████████.  VPC ████████████████████ that assumed ████████████████████████████████████████████████████ ████████████████████████.

78.     FEMA also relaxed or waived the RFP's Staffing Plan and Key Personnel requirements for VPC.  Again, FEMA was well aware that VPC's proposal violated FAR 52.219-14 and was not eligible for award.  Nevertheless, rather than label this issue a deficiency under the Staffing Plan and Key Personnel factor as the RFP required, FEMA █████████

17

███████████████████████████████████████████████████████████████████

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Again, FEMA's ▮▮▮▮▮ rating in this area ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮,

and, in fact, VPC ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

79.     Additionally, FEMA did not evaluate whether VPC presented evidence of experience recruiting for and staffing a similar contract, as the RFP required under the Staffing Plan & Key Personnel and which VPC could not provide. Ignoring these deficiencies, FEMA again awarded VPC ▮▮▮▮▮▮▮▮▮▮▮▮. FEMA then proceeded to initiate discussions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

80.     By contrast to the lenient treatment that VPC received, under which FEMA ▮▮▮▮▮▮▮▮▮▮▮▮▮ and assumed they could be corrected, FEMA ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Unlike its treatment of VPC, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

81.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ FEMA arbitrarily and capriciously relaxed its own competitive range determination criteria for VPC, but applied the criteria strictly when it came to Elias's proposal.

82.     Had FEMA applied the criteria to Elias in the same forgiving manner as it did to VPC, not only would Elias been included in the competition ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮, but Elias ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████████████████████████████

█████████████████████████████████████

83.     FEMA's decision ████████████████████████████████████████████████

██████████ at the same time as it assumed that glaring deficiencies in VPC's proposal could be

corrected, was not reasonable. The resulting competitive range determination was arbitrary and

capricious and should be corrected.

### COUNT II — FEMA Treated Elias Disparately from VPC in Allowing VPC to Revise Its Flawed Proposal but Excluding Elias on the Basis of Lesser Flaws.

84.     Elias realleges paragraphs 1 through 72 as if fully set forth herein.

85.     ████████████████████████████████████████████████████████████████

████████████████████████████████ the decision to exclude Elias from the competitive

range while including VPC was not ████████████████████████████████████████

████████████████████████████████ and not in accord with FEMA's intent to produce

a competitive range that included the most highly rated offerors.

86.     Elias was excluded ███████████████████████████████ FEMA's

preaward debriefing indicated ███████████████████████████████████████████

█████████████████████████████ Regardless ███████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████ In fact, ████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████

19

87.     Elias ████████████████████████████ Instead, in Elias's case,

FEMA ████████████████████████████████████████████

████████████████████████

88.     VPC was not treated equally strictly. ████████████████████

████████████████████████████████████████████████████

████████████     ███████████████████ these ██████████ were ████████

substantial ███████████████████████. Nevertheless, in contrast to the treatment

of Elias, FEMA did not eliminate VPC or even factor its shortcomings into its competitive range

determination. Instead, FEMA, at most, ██████████████ included VPC in the competitive

range anyway, and proceeded to engage in discussions.

89.     FEMA allowed VPC to ██████ ██████████████ ██████████

████████████████████ ██████████████████████████████████████

████████████ this disparate opportunity ██████████████ directly resulted in Elias's loss

of a fair opportunity to compete.

90.     The many serious weaknesses and deficiencies in VPC's proposal individually

and collectively outweigh ██████████████████████ FEMA treated Elias and

VPC disparately by excluding Elias and allowing VPC to go forward. The resulting competitive

range determination was arbitrary and capricious and must be corrected.

### COUNT III — VPC's Proposal Should be Eliminated Due to the Existence of an Unmitigatable Organizational Conflict of Interest

91.     Elias realleges paragraphs 1 through 72 as if fully set forth herein.

92.     The FAR requires contracting officers to take reasonable steps to identify an OCI

as soon possible and to mitigate OCIs when they arise. FAR § 9.504(a). In conducting this



analysis, contracting officers are required to identify situations that create even the appearance of impropriety.

93.     Mr. Fugate's current role at Cadmus creates, at a minimum, a potential OCI and an appearance of impropriety, because Mr. Fugate had access to nonpublic information that would be valuable to offerors under the RFP.

94.     Under the FAR, FEMA was required to investigate this matter, which was public knowledge before the discussions process ended and before the award decision was announced. *See* FAR § 9.504(a).

95.     FEMA undertook no OCI investigation and did not take any steps to mitigate potential OCI or dispel the appearance of impropriety.

96.     FEMA's decision to award to a prime contractor that is acting as the small-business stand-in for a company employing FEMA's former administrator raises an obvious and compelling appearance of impropriety, as well as the possibility of an unequal access to information OCI. FEMA's inaction in the face of such an obvious potential OCI violated the FAR and requires that this protest be sustained so that FEMA may investigate and take appropriate action to mitigate the appearance of impropriety's invitation to do so.

## COUNT IV — Permanent Injunctive Relief

97.     Elias realleges paragraphs 1 through 72 as if fully set forth herein.

98.     Injunctive relief is available when: (1) the plaintiff has succeeded on the merits; (2) the plaintiff will suffer irreparable harm absent injunctive relief; (3) the balance of hardships favors the grant of injunctive relief; and (4) the public interest favors a grant of injunctive relief.

99.     Elias will lose the opportunity to compete fairly for a contract under the RFP unless FEMA's competitive range determination and award decision are set aside.

Reimbursement of Elias's protest and proposal preparation costs would be insufficient to compensate Elias for the irreparable and permanent harm it will suffer in the absence of an injunction.

100.    The balance of hardships favors injunctive relief.  FEMA is not injured by an order that requires it to follow essential procurement regulations.  Elias, on the other hand, is a small business that will be permanently harmed by the loss of business unless FEMA's decision is corrected.

101.    The public interest favors injunctive relief to correct the errors FEMA has committed in this case.  This Court has recognized an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement statues and regulations.

## **PRAYER FOR RELIEF**

WHEREFORE, Elias prays that the Court:

A.    Find that FEMA conducted a flawed technical evaluation and unreasonably excluded Elias from the competitive range;

B.    Find that FEMA unreasonably treated Elias and VPC disparately by excluding Elias from the competitive range but including VPC and allowing it to rewrite its proposal;

C.    Direct FEMA to investigate a potential OCI affecting VPC and, if that OCI cannot be mitigated, eliminate VPC from the competition on that basis;

D.    Permanently enjoin VPC from performing the contract;

E.    Require that FEMA reconstitute the competitive range and permit Elias the opportunity to revise its proposal; and

F.    Grant such other relief as it deems appropriate.

Respectfully submitted this 8th day of November, 2017.

/s/ Jessica C. Abrahams
Jessica C. Abrahams
DENTONS US LLP
1900 K Street NW
Washington, D.C. 20006
Tel:  (202) 496-7204
Fax:  (202) 496-7756
jessica.abrahams@dentons.com

*Counsel for Elias Group, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2017, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, pursuant to which the Clerk will make service on Defendant the United States.

/s/ Jessica C. Abrahams      
Jessica C. Abrahams