▌

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

**Redacted Version**

| | |
|---|---|
| ELIAS GROUP, LLC, | |
|           Plaintiff, | Case No. 17-1490 |
| v. | Hon. Robert H. Hodges, Jr. |
| THE UNITED STATES OF AMERICA, | |
|           Defendant, | FILED UNDER SEAL |
| and | |
| VISION PLANNING & CONSULTING, LLC, | |
|           Defendant-Intervenor. | |

## ELIAS GROUP, LLC'S OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

DENTONS US LLP
Jessica C. Abrahams
1900 K Street NW
Washington, D.C. 20006
Tel: (202) 496-7204
Fax: (202) 496-7756
jessica.abrahams@dentons.com

*Counsel for Elias Group, LLC*

Of Counsel:

Joanne Zimolzak
Thomas Rath
Katherine L. Veeder
Deborah Rodin
*Counsel for Elias Group, LLC*

Dated: November 17, 2017

# TABLE OF CONTENTS

**Page**

SUMMARY ................................................................................................................... 1

STATEMENT OF THE CASE .................................................................................... 3

   I.   Overview of the RFP and Evaluation Criteria ................................................... 3

   II.   FEMA's Initial Award to VPC ......................................................................... 5

   III.   Protest of the Award and FEMA's Subsequent Corrective Action .................. 6

   IV.   FEMA's Second Award of the Contract to VPC .............................................. 7

   V.   Elias's Protest and the First Amended Complaint ........................................... 9

ARGUMENT ............................................................................................................... 9

   I.   The First Amended Complaint Renders Defendant's Motion Moot ................ 9

   II.   Elias Has Standing to Challenge Defendant's Improper Actions .................... 15

   III.   The First Amended Complaint States a Sufficient Claim on Which Relief Can Be Granted ................................................................................................. 18

CONCLUSION ........................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Belgarde v. United States*,
    No. 07-265L, 2008 WL 1990862 (Fed. Cl. Jan. 8, 2008)...................................................10, 11

*Caddell Constr. Co. v. United States*,
    111 Fed. Cl. 49 (2013) ...............................................................................................................12

*CliniComp Int'l, Inc. v. United States*,
    117 Fed. Cl. 722 (2014) ........................................................................................................15, 18

*Columbia Research Corp.*,
    B-284157, Feb. 28, 2000, 2000 CPD ¶ 158 ............................................................................19

*COMINT Sys. Corp. v. United States*,
    700 F.3d 1377 (Fed. Cir. 2012)..........................................................................................11, 12

*CW Gov't Travel, Inc. v. United States*,
    110 Fed. Cl. 462 (2013) ........................................................................................................18, 20

*Esterhill Boat Serv. Corp. v. United States*,
    91 Fed. Cl. 483 (2010) ...............................................................................................................16

*Kathryn Huddleston & Assocs., Ltd.*,
    B-289453, 2002 WL 378069 (Comp. Gen Mar. 11, 2002)......................................................19

*L-3 Commc'ns EOTech, Inc. v. United States*,
    83 Fed. Cl. 643 (2008) .......................................................................................16, 18, 19, 20

*Nat'l Air Cargo Grp., Inc. v. United States*,
    126 Fed. Cl. 281 (2016) .............................................................................................................10

*NetStar-1 Gov't Consulting, Inc. v. United States*,
    101 Fed. Cl. 511 (2011), *aff'd*, 473 F. App'x 902 (Fed. Cir. 2012) ........................................12

*PGBA, LLC v. United States*,
    60 Fed. Cl. 196, *aff'd*, 389 F.3d 1219 (Fed. Cir. 2004) .........................................................18

*QTC Med. Servs., Inc. v. United States*,
    132 Fed. Cl. 610 (2017) .............................................................................................................12

*Raytheon Co. v. United States*,
    809 F.3d 590 (Fed. Cir. 2015)..............................................................................................12, 13

*Smith v. United States*,
   120 Fed. Cl. 455 (2015) .................................................................................................9, 11

**Statutes**

15 U.S.C. §631 *et seq*..................................................................................................................7, 14

28 U.S.C. § 1491(b)(1) ........................................................................................................15, 16

Plaintiff Elias Group, LLC ("Elias") hereby files its Opposition to Defendant's, the United States of America, acting through the U.S. Department of Homeland Security, Federal Emergency Management Agency ("FEMA" or the "Agency"), Motion to Dismiss ("Motion to Dismiss" or "Motion").

### SUMMARY

Defendant's Motion is a house of cards built upon an inaccurate premise and represents an effort to argue the substantive merits of the protest in this procedural motion.  For starters, Defendant's Motion must be viewed in the context of the history of this procurement, and it is important to recognize that, now, just as when the first award was protested last year, FEMA is maneuvering in the hopes that the Agency's improper procurement actions never see the light of day.  In advancing this goal, Defendant roots its entire Motion — both its allegation that Count I was waived and that Elias lacks standing to bring Counts II and III — on the first allegation in Elias's original Complaint, which challenged FEMA's evaluation of Elias's proposal.  To the extent there was any confusion, with its First Amended Complaint ("First Amended Complaint" or "Amended Complaint" or "Am. Compl."), Elias has revised this ground in order to clarify the basis of its protest as a challenge to FEMA's evaluation of Elias's technical proposal as inconsistent and unequal because FEMA relaxed certain mandatory requirements in its evaluation of the proposal submitted by the awardee, Vision Planning & Consulting, LLC ("VPC").  To the extent Elias's allegations were not absolutely clear to the Government, the Amended Complaint should resolve any relevant confusion and render Defendant's Motion moot.  The Court need not look any further, and, on this basis alone, should deny Defendant's Motion.

██████████████████████████████████████████████

In fact, the Amended Complaint remedies all of the alleged deficiencies that stand at the foundation of Defendant's Motion. While Defendant argues that Elias waived Count I of the original Complaint pursuant to the *Blue & Gold* waiver rule, that rule does not constitute a bar to any of Elias's claims in the context of its Amended Complaint. The *Blue & Gold* waiver rule does not require a plaintiff to file a protest prior to contract award when it has no notice of its protest grounds. Elias's First Amended Complaint sets forth protest grounds that Elias could only have learned when FEMA announced the contract award to VPC. Only with this information did Elias become aware of the steps FEMA must have taken to make VPC's proposal compliant with FAR 52.219-14 and the Solicitation requirements, which necessarily resulted from FEMA's unequal evaluation of proposals, unequal composition of the competitive range, and unequal permission to revise proposals, ████████████████████████. Elias's protest of FEMA's unequal and disparate treatment of offerors was timely filed after award to VPC.

With respect to its argument that Elias lacks standing to bring Counts II and III, putting aside that Defendant's relevant challenge is premised entirely on a dismissal of Count I, an action for which there is no basis, it is irrefutable that Elias has standing to challenge FEMA's improper actions and award decision, including those set forth in Counts II and III of the original and Amended Complaints. Had FEMA treated Elias and VPC equally and in accordance with the Solicitation and the FAR, Elias would have been included in the competitive range and ██████████████████████████████. Particularly given ████████ ██████████, Elias very likely would have won the contract at issue in this protest.

Lastly, Defendant's Motion also should be denied because Elias's Amended Complaint sets forth facts that are more than sufficient to establish valid protest grounds on which relief can

be granted, including that FEMA unlawfully treated Elias and VPC in an unequal manner in evaluating technical proposals, in establishing a competitive range, and in ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. This unequal treatment violates the very underpinnings of the procurement process. Most notably, without this disparate treatment, Elias would have been awarded the contract at issue in the protest.

For these reasons, Elias respectfully requests that the Court deny Defendant's Motion to Dismiss.

## STATEMENT OF THE CASE

### I.    Overview of the RFP and Evaluation Criteria

FEMA issued the RFP on May 9, 2016, seeking proposals to provide technical and administrative support for FEMA's administration of various grant programs, including Assistance to Firefighters Grants, Fire Prevention and Safety Grants, and Staffing for Adequate Fire and Emergency Response grants. Am. Compl. ¶ 24. The RFP instructed offerors to submit price proposals and, in a separate volume, technical proposals addressing four factors, in the following order of importance: (1) Work Plan and Management Approach; (2) Past Performance; (3) Staffing Plan & Key Personnel; and (4) Quality Control Plan. *Id.* ¶¶ 26-27.

The RFP divided the first and most important technical factor, Work Plan and Management Approach, into two separate subfactors: Work Plan and Management Approach. *Id.* ¶ 28. For the Work Plan factor, offerors were required to explain how they proposed to achieve requirements set forth in the Performance Work Statement ("PWS"). *Id.* Specifically, the RFP provided that each offeror was to address each PWS objective, with reference to "skill levels, quantity of resources and methods of operation required for each contract period of performance (transition period, base period, and option periods)." RFP § L.4.4.2. Among other

things, to ensure a match between price and proposed performance method, offerors were to "describe the proposed allocation of resources in work breakdown structure format that is consistent with the price proposal (i.e., distribution of staff, types of labor, categories, subcontractors, etc.)." *Id.* Under the Management Approach subfactor, the RFP required offerors to demonstrate their "ability to direct and control the operation of this requirement both programmatically and on a daily basis in an efficient and cost effective manner." Am. Compl. ¶ 29.

The third technical factor, Staffing Plan & Key Personnel, required offerors to describe how they intended to staff the contract to meet the PWS requirements and included a requirement to present resumes of personnel meeting the minimum qualifications stated in the PWS. *Id.* ¶¶ 31-32. An amendment to the RFP, issued on June 2, 2016, included a table depicting Key Personnel requirements, which indicated that, among other requirements, the Project Manager/Alternate Project Manager was required to have a bachelor's degree in business or a related technical discipline, along with five years of project management experience. *Id.* ¶ 33.

FEMA's evaluation process for technical proposals included assigning adjectival ratings for each factor and for the technical volume as a whole. *Id.* ¶ 35. For the Work Plan and Management Approach factor and Staffing Plan & Key Personnel factor, these adjectival ratings were, in order of highest to lowest rating: Superior, Good, Satisfactory, Marginal, and Unsatisfactory. *Id.* ¶¶ 37-38. The "Unsatisfactory" rating was to be assigned if the proposal "fails to meet requirements and one or more deficiencies exist for which correction would require a major revision or redirection of the proposal. A contract cannot be awarded with this proposal." *Id.* ¶ 37. The RFP defined a "Deficiency" as a "material failure of an offer or

quotation to meet a Government requirement or a combination of significant weaknesses in an offer or quotation that increases the risk of unsuccessful contract performance to an unacceptable level." Am. Compl. ¶ 36.

## II.   FEMA's Initial Award to VPC

On September 29, 2016, Elias received notice that FEMA had awarded the contract to VPC.  *Id.* ¶ 41.  Elias immediately requested a debriefing, which it received in writing on October 7, 2016.  *Id.*  The debriefing disclosed that ███████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ Elias

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ Elias, however, ████████

█████████████████████████████████ because FEMA did not conduct discussions with any offeror before making its decision to award the contract to VPC.  *Id.*

████████████████████████████████, Elias ████████████████

████████████████████████████████████████████████████

███████████████████████████████ In fact, FEMA's evaluation

████████████████████████████████████████████████████

███████████████████████████████████ Elias ████████

████████████████████████████████████████████

## III. Protest of the Award and FEMA's Subsequent Corrective Action

On October 12, 2016, another offeror, 2M Research Services LLC ("2M"), protested the award to VPC at the Government Accountability Office ("GAO"). 2M alleged multiple shortcomings with VPC's proposal, including numerous technical deficiencies and a violation of the limitation on subcontracting clause, which should have resulted in an immediate disqualification from the competition. *Id.* ¶¶ 46-48. These proposal deficiencies included: no relevant experience on a comparably-sized contract; a labor allocation that plainly violated the limitation on subcontracting under FAR 52.219-14; and a lack of resources sufficient to perform as the prime contractor, including yearly revenues of only one percent the value of the contract issued under the RFP, a lack of private office space, and that five of its six "employees" were full-time university students or consultants who worked for other firms. *Id.* ¶¶ 47-52. Additionally, there were grave inconsistencies between VPC's technical and price proposals, which under the RFP evaluation criteria, constituted a deficiency that rendered the proposal ineligible for award. Not only should these deficiencies have impacted VPC's technical rating, particularly under the Work Plan and Management Approach factor and the Staffing Plan & Key Personnel factor, but some, like the technical and price proposal discrepancies and the violation of FAR 52.219-14, should have resulted in VPC's elimination from the competition.

On December 6, 2017, GAO dismissed the protest as academic due to FEMA's announcement that it would take corrective action. *Id.* ¶ 53. Specifically, FEMA articulated a four-pronged corrective action plan, representing to GAO that it would: (1) re-evaluate the past performance factor; (2) review compliance with the limitation on subcontracting clause under FAR 52.219-14; (3) decide whether to award with or without discussions and conduct a price evaluation as necessary; and (4) issue a new technical source selection evaluation board

██████████████████████████████████████████████████████████
███████████████████

consensus report and a source selection decision document. *Id.* These corrective measures aligned with significant flaws with VPC's proposal identified during the GAO protest. Most notably, FEMA's corrective action intended to review compliance with FAR 52.219-14, with which VPC plainly did not comply and which should have led to VPC's disqualification or, at a minimum, to VPC's being assigned a deficiency that would have rendered its proposal ineligible for award.[1] *Id.* ¶¶ 54-55.

## IV.  **FEMA's Second Award of the Contract to VPC**

On April 4, 2017, FEMA notified Elias that it again was excluded from the competitive range. Am. Compl. ¶ 57. On April 13, 2017, the Agency provided Elias a written debrief. *Id.* This debriefing ████████████████████████████████████████████

████████████████████████████████████████ █████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████ ████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████ In addition, ██

███████████████████████████, FEMA ██████████████████████

excluded it from the competitive range. *Id.* ¶ 59. As a result, Elias ████████████████

---

[1] Compliance with FAR 52.219-14 is mandated by statute, and this requirement cannot be waived in the context of an 8(a) set-aside, such as is the case here. 15 U.S.C. § 631 *et seq*. And, certainly, to the extent the Government disagrees, waiver is a defense that goes to the heart of the merits in this case, *i.e.,* whether there was unequal treatment of offerors, and may be an argument to be raised in a motion for judgment on the administrative record. It is certainly not an appropriate argument for or a basis to grant a procedural motion such as this.

███████████████████████████████████████
██████████████████████

███████████████████████████████████████

████████████████ *Id.* ¶¶ 59, 61.

In this April pre-award debriefing, FEMA did not disclose the number or names of offerors who were included in the competitive range.  At this point, Elias had no basis to know that VPC had been permitted the opportunity to rewrite its proposals or to otherwise speculate that FEMA had treated other offerors unequally, including in its evaluation of proposals and competitive range determination. Am. Compl. ¶ 60.

On September 29, 2017, FEMA again awarded the contract to VPC.  *Id.* ¶ 72.  It was only then that Elias discovered that FEMA had waived solicitation criteria for VPC, ignored VPC's proposal flaws, and included VPC in the competitive range ██████████████████████

███████████████████████████████████████

██████████████████████████ *Id.* ¶¶ 62-67.  As discussed above, among other things, ██████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████ *Id.* ¶¶ 55, 64.  Nevertheless, FEMA overlooked ██████████████████████████████

████████████████████  █████████████████████

████████████ and included VPC in the competitive range.  In addition, it was only when Elias received notice of the contract award that Elias learned that ████████████████████

███████████████████████████████ *Id.* ¶¶ 65-68, 72.

## V.    Elias's Protest and the First Amended Complaint

When it learned of the contract award to VPC, which could only be the result of clear favoritism and arbitrary and unequal treatment, Elias promptly filed a Complaint on October 10, 2017, challenging the Agency's actions.   On October 20, 2017, Defendant filed the subject Motion to Dismiss.  The Motion argued: (1) that the *Blue & Gold* waiver doctrine precluded the Court from entertaining Count I of Elias's Complaint; and (2) because Count I was waived, Elias could not establish standing to assert Counts II and III.  Defendant's Motion ("Def.'s Mot.") at 1, 10-12.

On November 8, 2017, Elias filed an Amended Complaint.  In the Amended Complaint, Elias challenges FEMA's irrational and unlawful, unequal treatment of Elias and the awardee, VPC, in evaluating proposals, establishing a competitive range, ███████████████████ ██████████████████  Am. Compl. ¶¶ 73-90.  Elias also challenges FEMA's improper failure to eliminate VPC from the competition due to an unmitigatable organizational conflict of interest. *Id.* ¶¶ 91-96.  Elias eliminated Count I of its original Complaint, alleging that FEMA's evaluation of Elias's technical proposal was unreasonable.

## ARGUMENT

## I.    The First Amended Complaint Renders Defendant's Motion Moot

This Court need not even consider Defendant's Motion to Dismiss and should deny it outright.  Elias filed an Amended Complaint on November 8, 2017, rendering moot Defendant's previously filed Motion to Dismiss.  When an amended complaint is filed, "the new complaint supersedes all previous complaints and controls the case from that point forward." *Smith v. United States*, 120 Fed. Cl. 455, 460 (2015) (quoting *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999)).  Therefore, "motions addressed to the original complaint are generally regarded as

moot upon the filing of an amended complaint." *Id.* (citations omitted) (denying defendant's pending motion to dismiss the original complaint as moot due to the filing of an amended complaint). In particular, an amended complaint that cures any alleged defects or weaknesses of the original complaint serves to moot a motion to dismiss based on those alleged flaws. *See Belgarde v. United States*, No. 07-265L, 2008 WL 1990862, at *1, *3 (Fed. Cl. Jan. 8, 2008) (finding the government's motions to dismiss moot in light of the submission of an amended complaint that rectifies shortcomings in prior pleadings).

Here, Defendant's Motion is premised entirely on its argument that Count I of the original Complaint must be dismissed because Elias has waived its challenge to the reasonableness of FEMA's evaluation of Elias's technical proposal. Def.'s Mot. at 9-12. It then argues that because Count I should be dismissed, Elias lacks standing to bring Counts II and III. *Id.* at 12. In so doing, Defendant is endeavoring improperly to employ this procedural motion to argue the merits of the case by ███████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ ▪

Unfortunately, but critically, Defendant's Motion is inconsistent with the Complaint as-filed. Specifically, the First Amended Complaint does not challenge FEMA's evaluation of Elias's technical proposal standing alone. Instead, Elias's challenge concerns FEMA's arbitrary and disparate treatment of Elias and the awardee, VPC, in evaluating proposals, establishing a competitive range to include VPC but not Elias, ███████████████████████████

███████████████, as well as FEMA's unlawful failure to eliminate VPC from the competition due

---

[2] In its Motion, Defendant attempts to argue the substantive merits of the protest. *See* Def.'s Mot. at 9-10. These arguments are improper and should not be entertained at this stage of the bid protest. "A court deciding a jurisdictional motion to dismiss must not reach the merits." *Nat'l Air Cargo Grp., Inc. v. United States*, 126 Fed. Cl. 281, 288 (2016) (citation omitted).

████████████████████████████████████████

to an organizational conflict of interest. Am. Compl. ¶¶ 73-96. Elias's First Amended Complaint, therefore, renders moot Defendant's Motion which is directed entirely at the now non-existent Count I of the original Complaint. *See Smith*, 120 Fed. Cl. at 460. Defendant's pending Motion to Dismiss should accordingly be denied.

Moreover, Elias's Amended Complaint renders Defendant's Motion moot because it cures all alleged defects of which Defendant complains. *See Belgarde*, 2008 WL 1990862, at *1, *3. While Defendant argues that Elias waived Count I of the original Complaint, the *Blue & Gold* waiver rule does not preclude Elias's protest of FEMA's unlawful unequal treatment of Elias and VPC now contained in Count I of the Amended Complaint. Elias challenges FEMA's irrational and unlawful disparate treatment of Elias and VPC in evaluating proposals, in establishing a competitive range, and in ███████████████████████████████ Elias was unaware of this arbitrary and illegal disparate treatment until it learned that FEMA had awarded the contract to VPC, which was the first indication that VPC, ███████████ had been included in the range ███████████████. Elias promptly filed this protest soon after FEMA's award announcement. Elias's protest is therefore timely and the waiver rule does not apply here.

The waiver rule states that a party who has the *opportunity* to object to a solicitation or procurement action and fails to do so prior to contract award waives its ability to later raise that objection. *See COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1382 (Fed. Cir. 2012). Inherent in the waiver rule is that the protesting party must have had *knowledge or notice* of the basis for protest in order to have had the opportunity to raise the claim before award of the contract. *See, e.g.*, *id.* at 1382-83 (indicating that the waiver rule does not extend to offerors who were "unaware of the alleged defect . . . prior to the award of the contract" or where there is not

an "adequate opportunity to object"); *Caddell Constr. Co. v. United States*, 111 Fed. Cl. 49, 76-77 (2013) (finding that waiver rule did not apply because "plaintiff did not have knowledge of the basis for its claims until after contract award").[3]

Where an offeror has no knowledge or notice of improper agency action prior to contract award, it is patently unreasonable to expect the offeror to bring a protest prior to that award. *See, e.g.*, *Raytheon Co. v. United States*, 809 F.3d 590, 597-98 (Fed. Cir. 2015) (finding *Blue & Gold* waiver rule inapplicable where protester did not know of disparate treatment until after contract award); *COMINT Sys. Corp.*, 700 F.3d at 1383 n.6 (finding waiver rule inapplicable where protester did not learn of a particular rating or eligibility determination until the contracts were awarded); *Caddell Constr. Co.*, 111 Fed. Cl. at 73-77 (finding waiver rule inapplicable where protester did not have sufficient information prior to contract award to raise claims regarding the agency's evaluation and award decisions). This Court has made clear that an offeror is not expected to divine an agency's intent before the procurement action occurs: "No doctrine or case requires a potential protestor to be clairvoyant or to police an agency's general noncompliance with the FAR on the possibility that such misfeasance might become relevant in a protest." *NetStar-1 Gov't Consulting, Inc. v. United States*, 101 Fed. Cl. 511, 523, n.17 (2011) (not applying the waiver rule because "this claim [that the challenge was untimely] conveniently ignores the fact that NetStar did not know that ALON was bidding on the RFQ until after the

---

[3] Defendant recognizes that the waiver rule applies only in challenges to allegedly erroneous procurement actions "when the bidders had notice of the actions" prior to contract award but failed to protest before award. Def.'s Mot. at 7. Indeed, Defendant cites cases that apply the waiver rule only in instances where the protester knew or should have known, *prior to contract award*, of the basis for its protest. *See id.* at 6-7. For example, in *QTC Medical Services, Inc. v. United States*, 132 Fed. Cl. 610, 621-22 (2017), the court found protester's claim was waived because the protester had notice of the challenged evaluation methodology and discussions relating to price prior to submitting its final proposal revisions. Here, as explained in detail, Elias did not know or have reason to know of its protest grounds until after contract award.

██████████████████████████████████████████████████
████████████████████████████████

award decision was announced), *aff'd*, 473 F. App'x 902 (Fed. Cir. 2012). In these instances, the waiver rule does not apply.

Therefore, in the context of allegations of unequal treatment, a violation that occurs during the post-solicitation process of evaluation, discussion, and award cannot reasonably be subject to the waiver rule where the protester "had no reason to know" prior to contract award that the agency treated offerors unequally. *See Raytheon Co.*, 809 F.3d at 598 (stating that, without notice of unequal treatment prior to award, a disparate treatment violation "has not been, and cannot sensibly be, subject to a requirement of objection before the bidding closes").

Here, before FEMA awarded the contract, Elias did not know, and had no reason to know, that the Agency treated it unequally and unfairly in contravention of FAR 15.306(e)(1) by including VPC in the competitive range ████████████████████████████ ██████████████████████ while excluding Elias from the competitive range ████ ██████████████████████████████ On April 4, 2017, FEMA notified Elias that it was excluded from the competitive range and, on April 13, 2017, provided Elias a written debrief. Am. Compl. ¶ 57. In that debriefing, Elias learned that FEMA ████ ████████████████████████████████████████████████ ████████████████████████████████ ████████████████████ ████████████████████████████, FEMA ████████████ ██████████████████████ excluded it from the competitive range. *Id.* ¶ 59. The pre-award debriefing did not disclose which offerors, or how many offerors, were included in the competitive range, and Elias had no basis to speculate that FEMA had treated other offerors differently, including in its evaluation of proposals and competitive range determination, ████████████████████████████. *Id.* ¶ 60.

██████████████████████████████████████████████

It was not until September 29, 2017, that Elias learned of the award to VPC. *Id.* ¶ 72.

Only then did Elias discover that FEMA ███████████████████████████ ███

████████ ██████████████████████████████████, ██████████

███████, and included it in the competitive range. *Id.* ¶¶ 62-63. The award to VPC

necessarily indicated that VPC had been included in the competitive range despite ███

████████ that led FEMA to take corrective action in response to the 2M protest. Since it was

included in the competitive range, █████████████████████████████

███████████████████████████████████. Am. Compl. ¶¶ 67, 72.

FEMA did not ███████████████████ — it did not ███████████████

███████████████████████████, and it did not █████████

████████████████████████████████████. ████████████

████████████████████ it was only upon learning of the award to VPC

that Elias knew or had reason to know that it had been treated unequally.[4] As a result, Elias had

no knowledge of and no reason to know of the basis for its protest until after the award decision

was announced.[5]

─────────────────

[4] This unequal treatment is egregious given █████████████████████ —
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████. ████████████████████████████. This is particularly so given FEMA's representation to GAO
that, as part of its proposed corrective action plan, the Agency would evaluate offerors'
compliance with FAR 52.219-14 as a precondition to further participation in the procurement, as
required by applicable law and regulation. 15 U.S.C. § 631 *et seq.*; FAR 52.219-14.

[5] Defendant argues that Elias could have and should have brought its protest: (1) as a post-award
protest after the first award to VPC; and (2) as a pre-award protest after it was excluded from the
competitive range. These arguments are unavailing because, as discussed above, Elias is not
challenging its technical evaluation rating as unreasonable on its own, but solely in relation to the
comparatively lenient evaluation of VPC. Elias could not have discovered and did not discover
this disparate treatment until after award of the contract.

██████████████████████████████████████

Without knowledge or notice of FEMA's disparate, unequal treatment of offerors in violation of FAR 15.306(e)(1), Elias had no adequate previous opportunity to challenge the Agency's actions. Only after Elias learned of the Agency's award decision did it have the basis for the present challenge. Accordingly, Elias's Amended Complaint has remedied the defects alleged by Defendant, and Defendant's Motion should be denied.

## II.     Elias Has Standing to Challenge Defendant's Improper Actions

As noted above, Defendant's challenge to Elias's standing is premised entirely on this Court dismissing Count I of the original Complaint for being untimely under the *Blue & Gold* waiver rule. Def.'s Mot. at 12. Defendant's sole standing argument is that "[i]f the Court were to dismiss count I", there would be no prejudice to Elias as a result of FEMA's evaluation errors, and Elias would be unable to establish standing for Counts II and III. *Id.* As explained above, Defendant's challenge to the sufficiency of Count I is now moot, and Elias timely brings its protest of the Agency's actions. Therefore, Defendant's challenge to standing can no longer stand, and its Motion must be denied.

To the extent the Defendant's challenge to Counts II and III is held to survive Elias's filing of its First Amended Complaint, the Motion to Dismiss on standing grounds should still be denied. Elias has standing to invoke this Court's bid protest jurisdiction and challenge FEMA's erroneous actions and award decision under the RFP at issue. To establish standing, a protester must demonstrate that it is an "interested party" under 28 U.S.C. § 1491(b)(1), by showing that it was an actual or prospective offeror whose direct economic interest would be affected by the award of the contract. *See CliniComp Int'l, Inc. v. United States*, 117 Fed. Cl. 722, 734 (2014). A protester must also show that it was prejudiced by an agency's action. *Id.* A protester establishes prejudice, and therefore standing, by demonstrating that it had a "substantial chance"

of receiving the contract award but for the alleged error in the procurement process. *Id.* at 734-35 (finding that, but for alleged flaws in the procurement, including the agency's disparate treatment of proposals, offeror would have had a substantial chance of receiving the contract award).

In the context of a post-award bid protest, an offeror excluded from the competitive range may establish standing as an interested party, including by demonstrating unequal treatment in a competitive range determination. *See, e.g.*, *L-3 Commc'ns EOTech, Inc. v. United States*, 83 Fed. Cl. 643, 651 (2008) (finding standing for a protester eliminated from the competitive range because, but for unequal treatment and other alleged errors, it had a substantial chance of winning the contract); *see also Esterhill Boat Serv. Corp. v. United States*, 91 Fed. Cl. 483, 486 (2010) (holding that protester had standing despite being eliminated from the competitive range because, if its allegations were correct, the protester could win the contract).

Elias is an interested party under 28 U.S.C. § 1491(b)(1) because it is an actual offeror whose direct economic interest was adversely affected by FEMA's disparate treatment of its and VPC's proposals, by FEMA's failure to eliminate VPC from the competition due to an unmitigatable organizational conflict of interest, and by FEMA's subsequent award of a contract to VPC. Had FEMA evaluated VPC's and Elias's proposals fairly and in accordance with the terms of the RFP and the FAR, Elias would have been included in the competitive range, ███████ ████████████████████████████████████████████████████ and likely would have been awarded the contract. Indeed, Elias had far more than a substantial chance of receiving the contract award and its direct economic interest was affected by FEMA's actions; thus it has standing to bring this suit.

████████████████████████████████████████████████████

Elias  ████████████████████████████████████████

████████████████████████████████████  Elias's proposal  ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████  Had  Elias  received  equal  treatment  ██████████████

████████████████████████████████████████████████████

Specifically,  Elias  ████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████  ███████████  Elias  ██████████████████████

████████████████████████████████████████████████████

█████████████████

Elias  ██████████████████████  however, due to FEMA's unequal treatment of it and

VPC.  FEMA arbitrarily and unequally evaluated Elias's and VPC's proposals  ██████████

███████████, allowing VPC into the competitive range,  ████████████████████

██████████  while simultaneously  ██████████████████████████████

████████████████████████████████████████████████████

But for FEMA's unlawful disparate treatment of Elias and VPC, Elias undeniably would have

been included in the competitive range,  ████████████████████████████████

████████████████████████████████  and  likely  would  have  been

awarded  the  contract,  particularly  in  light  of  VPC's  unmitigated  organizational  conflict  of

interest.  Therefore, Elias has standing to assert its challenge to FEMA's unlawful procurement actions.

### III. The First Amended Complaint States a Sufficient Claim on Which Relief Can Be Granted

Not only should Defendant's Motion be denied because the Motion is moot as Count I of Elias's Amended Complaint is timely, *see supra* Section I, and because Elias has standing to bring Counts II and III, *see supra* Section II, but Defendant's Motion also should be denied because Elias's Amended Complaint sets forth facts that are more than sufficient to establish valid protest grounds on which relief can be granted.[6]

It is a fundamental tenet of government procurement that an agency "must treat all offerors equally, evaluating proposals evenhandedly against common requirements and evaluation criteria." *CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 490 (2013) (quotation and citation omitted).  "[U]neven treatment goes against the standard of equality and fair-play that is a necessary underpinning of the federal government's procurement process and amounts to an abuse of the agency's discretion." *PGBA, LLC v. United States*, 60 Fed. Cl. 196, 207, *aff'd*, 389 F.3d 1219 (Fed. Cir. 2004).

Moreover, waiving or relaxing a requirement of the solicitation solely for the benefit of one offeror, or in any way holding one offeror to different and more stringent standards than the successful offeror, constitutes unlawful disparate treatment that invalidates a procurement decision. *See, e.g.*, *CliniComp Int'l, Inc.*, 117 Fed. Cl. at 741-42 (holding that agency unlawfully engaged in unequal treatment when it rejected protester's quotation as technically unacceptable but overlooked the awardee's alleged deficiency); *L-3 Commc'ns EOTech, Inc.*, 83 Fed. Cl. at

---

[6] Although not directly raised in Defendant's Motion to Dismiss, Elias hereby posits that it has sufficiently stated a claim as a result of this issue being raised in a conference call with the Court on November 15, 2017.

651-53 (finding unfair and disparate treatment when the Army relaxed a solicitation requirement only for the awardee while strictly applying solicitation requirements for another offeror).

The principle of equal treatment of offerors extends to discussions and competitive range determinations.   The FAR provision governing exchanges with offerors commands that "Government personnel involved in the acquisition shall not engage in conduct that . . . Favors one offeror over another."   FAR 15.306(e)(1).   This Court and the GAO have therefore consistently found that a competitive range determination that is the result of disparate treatment is invalid and cannot stand.  *L-3 Commc'ns EOTech, Inc.*, 83 Fed. Cl. at 653 ("[T]he Army's narrowing of the competitive range based on a test which is "do or die" for one proposal, then relaxed or waived for others, is irrational."); *Kathryn Huddleston & Assocs., Ltd.*, B-289453, 2002 WL 378069, at *4 (Comp. Gen Mar. 11, 2002) ("Judgments regarding which proposals are included in the competitive range must be made in a relatively equal manner.  An agency cannot reasonably exclude a proposal from the competitive range where the strengths and weaknesses found in that proposal are similar to those found in proposals included in the competitive range."); *see also Columbia Research Corp.*, B-284157, Feb. 28, 2000, 2000 CPD ¶ 158 (same).

Elias's Amended Complaint establishes facts that, if true as alleged, expose FEMA's blatantly unequal treatment of Elias and VPC in its proposal evaluation, competition range determination and its granting VPC, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This unequal treatment constitutes a significant violation of law.   *See, e.g.*, *L-3 Commc'ns EOTech, Inc.*, 83 Fed. Cl. at 651-53.   FEMA identified ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮.  Am. Compl. ¶¶ 63-66.  By contrast, FEMA ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████████

More than that, FEMA included VPC in the competitive range and ████████████

█████████████████████████████████████ *Id.* ¶¶ 67-68. ██████

████████████████████████████████████████████

██████████████████████████████ *Id.* At the same time, FEMA excluded

Elias from the competitive range, ████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████ This

treatment plainly fails to meet the standard of equal and evenhanded treatment against common

requirements and is exactly the type of unequal treatment that is sufficient to sustain a bid

protest. *See CW Gov't Travel, Inc.*, 110 Fed. Cl. at 490; *see also L-3 Commc'ns EOTech, Inc.*,

83 Fed. Cl. at 651-53. But for this unequal treatment, Elias would not have been excluded from

the competitive range, ████████████████████████████████████

████████and would have been awarded the contract. On this basis, Defendant's Motion should

be denied.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny Defendant's

Motion to Dismiss.

Respectfully Submitted,

/s/ Jessica C. Abrahams
Jessica C. Abrahams
Dentons US LLP
1900 K Street NW
Washington, D.C. 20006
Tel: (202) 496-7204
Fax: (202) 496-7756
jessica.abrahams@dentons.com

*Counsel for Elias Group, LLC*

Of Counsel:

Joanne Zimolzak
Thomas Rath
Katherine L. Veeder
Deborah Rodin
*Counsel for Elias Group, LLC*

Dated:  November 17, 2017

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2017, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, pursuant to which the Clerk will make service on Defendant the United States.

/s/ Jessica C. Abrahams
Jessica C. Abrahams